# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

| | | |
|---|---|---|
| COOSA RIVER BASIN INITIATIVE, | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT FOR** |
| | ) | **DECLARATORY AND** |
| v. | ) | **INJUNCTIVE RELIEF** |
| | ) | |
| CITY OF CALHOUN, GEORGIA and | ) | |
| MOSS LAND COMPANY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Coosa River Basin Initiative ("CRBI") files this Complaint against

Defendants City of Calhoun, Georgia ("Calhoun") and Moss Land Company, LLC

("Moss Land Company") as follows:

## STATEMENT OF THE CASE

1.      This is a citizen suit under Section 505(a)(1) of the Clean Water Act

("CWA"), 33 U.S.C. § 1365(a)(1), to cease ongoing unlawful pollution of surface

waters caused by discharges of per- and polyfluoroalkyl substances ("PFAS") into

Calhoun's Water Pollution Control Plant ("WPCP") which contaminate sludge (or

"biosolids") that Calhoun and Moss Land Company have for many years disposed

of in the Coosawattee River watershed. The discharges of PFAS from this sludge

disposal have contaminated soil, groundwater, and surface water with these dangerous chemicals, including the Coosawattee River, which is the source of drinking water for the western half of Gordon County. Defendants Calhoun and Moss Land Company discharge PFAS from at least three discrete channels, ditches, or conveyances of surface water to the Coosawattee River and via groundwater from certain real property further identified below and collectively described as "Sludge Field 11" which is situated next to the Coosawattee River.

2.     Calhoun's WPCP employs a conventional wastewater treatment process that cannot remove or destroy PFAS. The WPCP generates sewage sludge that is disposed of through land application on designated real properties in the region. In addition to domestic sewage, the WPCP also receives discharges of industrial wastewater from numerous Significant Industrial Users[1] who produce carpets, rugs, rubber products and/or textiles, or whose operations entail chemical blending, dyeing, or the use of plastics, latex, resins, surfactants, adhesives, printing, textile coatings or flame-retardants. PFAS are widely used in these

---

[1] 40 CFR § 403.3(v) defines a Significant Industrial User, and all industrial users that discharge wastewater to the Calhoun WPCP for the relevant time period identified or described herein meet this definition.

industries to repel water, oil, and/or stains, suppress flame, or for other uses. Nearly all of the WPCP's Significant Industrial Users are and have been engaged in these industries that use and discharge industrial wastewater containing PFAS. Calhoun allows unlimited PFAS to the WPCP in wastewater discharges received from its Significant Industrial Users, as it imposes no requirements on its Significant Industrial Users to prevent PFAS from entering the WPCP, where these pollutants accumulate in and contaminate sludge generated by the WPCP.

3.      Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits discharges of pollutants by any person into waters of the United States except as authorized by a National Pollutant Discharge Elimination System permit. Calhoun is in violation of the Clean Water Act, 33 U.S.C. § 1311(a), because it is discharging PFAS from Sludge Field 11 and at least three discrete channels, ditches, or conveyances thereon to the Coosawattee River without a NPDES permit.

4.      Moss Land Company is likewise in violation of the CWA, 33 U.S.C. § 1311(a), because it is discharging PFAS from Sludge Field 11 and at least these three discrete channels, ditches, or conveyances thereon to the Coosawattee River without a NPDES Permit. Furthermore, Calhoun and Moss Land Company are in

violation of Section 301(a) of the Clean Water Act because they are discharging PFAS from Sludge Field 11 to the Coosawattee River through groundwater without a NPDES permit authorizing such discharges.

5.     Calhoun's unpermitted PFAS discharges from Sludge Field 11 to the Coosawattee River also violate its NPDES Permit. Part II.A.10 of the Permit provides that Calhoun "shall take all reasonable steps to minimize or prevent any discharge or sludge disposal which might adversely affect human health or the environment." Part II.A.11 of Calhoun's NPDES Permit requires Calhoun to "immediately take all reasonable and necessary steps to prevent injury to property and downstream users" of water whenever any toxic substance or any other substance would endanger downstream users of waters of the State of Georgia. Finally, Part III.A of Calhoun's NPDES Permit requires Calhoun to properly administer its approved pretreatment program by, among other things, revising the adopted local limits imposed on Industrial User discharges "to ensure that the local limits continue to prevent… Municipal sludge contamination…"

6.     Calhoun is in violation of Part II.A.10, Part II.A.11, and Part III.A.2. of its NPDES Permit, and in turn the Clean Water Act, because of, among other things, its ongoing allowance of unrestricted PFAS in wastewater from its

4

Significant Industrial Users, failure to prevent contamination of WPCP sludge with PFAS, land disposal of this PFAS-contaminated sludge and resulting discharges of PFAS into the Coosawattee River from Sludge Field 11, as set forth in further detail in Count II below.

7.      This action also asserts claims against Calhoun and Moss Land Company under the citizens enforcement provision of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), which authorizes citizens to sue any past or present generator, transporter, owner or operator of a treatment, storage or disposal facility contributing or who have contributed to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment. These RCRA claims seek to require Defendants Calhoun and Moss Land Company to remove PFAS-contaminated sludge from Moss Land Company property in the Coosawattee River watershed; to require Defendant Calhoun to cease generation of PFAS-contaminated sludge at the WPCP, cease disposing of PFAS contaminated sludge on property from which PFAS is released into soil, groundwater or surface water, and to remove all such sludge previously disposed of and remediate the impacts therefrom; to provide

5

effective temporary and permanent treatment systems capable of removing PFAS from Gordon County's drinking water supply; and to otherwise cease and remedy its ongoing imminent and substantial endangerment of health and the environment caused by PFAS contamination of soil, groundwater, surface water and drinking water.

8.     This action seeks declaratory relief, injunctive relief, civil penalties and costs of litigation, including reasonable attorney and expert fees and expenses.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over the Clean Water Act claims set forth in this Complaint against Defendants Calhoun and Moss Land Company pursuant to Section 505(a) of the CWA, 33 U.S.C. § 1365(a), and 28 U.S.C. § 1331.

10.     This Court has subject matter jurisdiction over the RCRA claims set forth in this Complaint against Defendants Calhoun and Moss Land Company pursuant to Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), and 28 U.S.C. § 1331.

11.     CRBI has complied with the pre-suit notice provisions of the Clean Water Act. Pursuant to Section 505(b)(1)(A) of the CWA, 33 U.S.C. §

1365(b)(1)(A), CRBI, on September 15, 2023, tendered notices of intent to file suit under the CWA via certified mail to Defendants Calhoun and Moss Land Company, the Administrator of the U.S. Environmental Protection Agency, the Regional Administrator of the EPA, the Georgia Department of Natural Resources' Environmental Protection Division ("EPD"), and the United States Attorney General. [hereinafter "September CWA Notices," attached hereto as Exhibit A (September CWA Notice to City of Calhoun, Georgia with documentation of its receipt) and Exhibit B (September CWA Notice to Moss Land Company with documentation of its receipt), each of which is incorporated by reference herein.] CRBI, on October 12, 2023, tendered a supplemental notice of intent to file suit under the CWA via certified mail to Defendant Calhoun and these agencies [hereinafter "October CWA Notice" attached hereto as Exhibit C and incorporated by reference herein (October CWA Notice to City of Calhoun, Georgia with documentation of its receipt)]. These September CWA Notices and the October CWA Notice complied with 33 U.S.C. § 1365(b)(1)(A) and with 40 C.F.R. Part 135, Subpart A. More than sixty (60) days have passed since these Notices were served on Defendants Calhoun and Moss Land Company and these agencies.

12.     Neither EPA nor EPD has commenced and is diligently prosecuting a
civil or criminal action in a court of the United States or State to redress the
violations of the Clean Water Act by Defendants Calhoun and Moss Land
Company. In addition, neither EPA nor EPD has commenced an administrative
civil penalty action under Section 309(g)(6) of the Clean Water Act, 33 U.S.C. §
1319(g)(6), or under a comparable Georgia law, to redress the violations of the
CWA by these Defendants set forth in the September or October CWA Notices.
Any administrative action taken by EPD to address these violations would not
preempt this CWA lawsuit because Georgia's water pollution enforcement scheme
is not comparable to the enforcement provisions of the CWA.

13.     CRBI has complied with the pre-suit notice provisions of the RCRA.
Pursuant to Section 7002(b)(1)(A) of RCRA, 42 U.S.C. § 6972(b)(1)(A), on
September 15, 2023, CRBI mailed notices of intent to file suit under the RCRA to
Defendants Calhoun and Moss Land Company, the Administrator of the EPA, the
Regional Administrator of the EPA, the Georgia EPD, and the United States
Attorney General. [RCRA Notices attached hereto as Exhibit A (Notice to City of
Calhoun with documentation of its receipt) and Exhibit B (Notice to Moss Land
Company with documentation of its receipt), each incorporated by reference

herein.] These Notices complied with 42 U.S.C. § 6972(b)(1)(A) and with 40 C.F.R. § 254.3. More than ninety (90) days have passed since these Notices were tendered to the Defendants Calhoun and Moss Land Company and these agencies.

14.    The EPA has not commenced, nor is it prosecuting, a civil action in a court of the United States under 42 U.S.C. § 6973 or under 42 U.S.C. § 9606 to address the imminent and substantial endangerment to health or the environment detailed in the RCRA Notices. EPA has not engaged in a removal action nor incurred costs to initiate a Remedial Investigation and Feasibility Study under 42 U.S.C. § 9604. EPA has not obtained a court order (including a consent decree) or issued an administrative order under 42 U.S.C. § 9606 or 42 U.S.C. § 6973, pursuant to which Calhoun is conducting a removal action, Remedial Investigation and Feasibility Study, or proceeding with a remedial action on the properties where PFAS-contaminated sludge has been disposed of.  PFAS from the sludge, therefore, will continue to contaminate soil, groundwater, river sediment, and surface waters, including the Coosawattee River and its tributaries, the surface water intake supplying water to Calhoun's Mauldin Road drinking water treatment plant, the groundwater wells and the Big Spring from which Calhoun's Brittany Drive drinking water treatment plant obtains source water, and downstream waters.

15.     The Georgia EPD has not commenced, nor is it prosecuting, an action under 42 U.S.C. § 6972(a)(1)(B) to address the imminent and substantial endangerment to health or the environment detailed in the RCRA Notices; nor is the Georgia EPD engaged in a removal action under 42 U.S.C. § 9604; nor has the Georgia EPD incurred costs to initiate a Remedial Investigation and Feasibility Study under 42 U.S.C. § 9604 on the properties where PFAS-contaminated sludge has been disposed of.

16.     CRBI will, immediately upon receipt of a file-stamped copy of this Complaint, mail a copy to the Administrator of the EPA, the Regional Administrator of the EPA, and the Attorney General of the United States.

17.     Venue is proper in the Northern District of Georgia, because the sources of the violations alleged herein under the CWA and RCRA are located within the Northern District of Georgia. 33 U.S.C. § 1365(c)(1); 42 U.S.C. 6972(c); 28 U.S.C. § 1391(b), (c).

## **PARTIES**

18.     Plaintiff is a "citizen" within the meaning of 33 U.S.C. §§ 1365(a) and 1365(g).

19.     Plaintiff is a "person" within the meaning of 42 U.S.C. §§ 6903(15) and 6972(a).

20.     Plaintiff Coosa River Basin Initiative is a non-profit corporation organized under the laws of the State of Georgia that seeks to protect, preserve, and restore one of North America's most biologically diverse river systems, the Upper Coosa River Basin, including the Coosawattee River, Oostanaula River, Coosa River, Weiss Lake, and connected waters and land drained by these waters as part of the hydrologic cycle, including groundwater and springs that feed these waters. CRBI achieves these purposes and objectives through education, advocacy, monitoring, public engagement, social events, sampling, pollution prevention measures, and seeking redress in the courts where reasonably necessary.

21.     CRBI is a member organization with more than 500 members, including individuals, families, and businesses – many of whom own real property and/or reside, consume drinking water, work, engage in social events, and swim, fish, boat, or otherwise recreate on, near, and around the Coosawattee River and connected waters, including the Oostanaula River, Coosa River, and Weiss Lake downstream from Calhoun and Moss Land Company's PFAS contamination and pollutant discharges.

22.     The CWA and RCRA violations alleged herein have directly and substantially harmed CRBI members and lessened these members' property and economic interests, as well as their recreational and aesthetic enjoyment of the Coosawattee River, Oostanaula River, Coosa River, and connected creeks, rivers, lakes, and other waterbodies, such as tributaries to these waters, as well as connected groundwater and springs that feed these waters. These members would use and enjoy their properties and these waters more if the violations alleged herein ceased.

23.     CRBI has members who rely on, use and consume water from the Mauldin Road Water Treatment Plant and the Brittany Drive Water Treatment Plant as the source of their household water supplies and in drinking water supplied to their homes and in public drinking water supplied to restaurants, schools, places of worship, and public facilities within the City of Calhoun and in Gordon County. These members thus have property, economic, and health interests in these waters and have been, and will continue to be, directly and substantially injured as a direct result of Calhoun and Moss Land Company's ongoing contamination of the public drinking water supply with PFAS which poses a risk to these members' health and safety. Their use and enjoyment of the water they

consume from these sources is lessened by Calhoun's and Moss Land Company's ongoing contamination of the public drinking water supply in Gordon County by PFAS.

24.     CRBI also has members whose homes rely on residential groundwater wells in proximity to properties where Calhoun has disposed of PFAS-contaminated sludge, including Sludge Field 11, as the source of their domestic water supplies.  These members thus have property, economic and health interests in the groundwater supplying these wells and have been, and will continue to be, directly and substantially injured as a direct result of Calhoun and Moss Land Company's ongoing contamination of groundwater with PFAS which poses a risk to these members' health and safety. Their use and enjoyment of the water they use and consume from these sources is lessened by Calhoun's and Moss Land Company's ongoing contamination of the groundwater and private drinking water wells in Gordon County with PFAS.

25.     These injuries will not be redressed except by an order from this Court requiring Calhoun and Moss Land Company to take immediate action to halt their ongoing PFAS pollution throughout the Upper Coosa River Basin—both from PFAS discharges to the Coosawattee River and continuing contamination from the

disposal of PFAS-contaminated sludge throughout Gordon County. Thus, enforcement by this Court as to CRBI's claims asserted and relief sought in this Complaint, including injunctive relief to cease and remedy the violations, and the imposition of civil penalties, would provide redress for the injuries suffered by CRBI and CRBI's members. Because they are being caused by pollution of waters of the United States, these injuries fall within the zone of interests protected by the CWA. Likewise, because they are being caused by Defendants' disposal of solid waste containing PFAS, these injuries fall within the zone of interests protected by RCRA's imminent and substantial endangerment provision.

26.    The interests CRBI seeks to protect in this lawsuit are germane to its purposes and objectives, but neither the claims asserted herein, nor any of the relief requested, require the participation of individual members in this lawsuit. Accordingly, CRBI has standing to prosecute this action.

27.    Defendant Moss Land Company, LLC is a domestic Limited Liability Company with its principal office in Atlanta, Georgia. Moss Land Company owns over 2,000 acres of real property on Pine Chapel Road in Gordon County, Georgia on which it has permitted Defendant Calhoun to dispose of PFAS-contaminated sludge generated by the Calhoun WPCP.

28.     Defendant City of Calhoun is a municipal corporation organized under the laws of the State of Georgia which owns and operates the Calhoun WPCP, consisting of various wastewater collection, treatment, and sludge generation and storage facilities. Calhoun also owns and operates the Mauldin Road Water Treatment Plant ("WTP") and the Brittany Drive WTP, which provide drinking water for all of Calhoun and Gordon County that are connected to the municipal drinking water supply.

29.     Defendants Calhoun and Moss Land Company are "person[s]" within the meaning of 33 U.S.C. §§ 1362(5) and 1365(a)(1).

30.     Defendants City of Calhoun and Moss Land Company are also "person[s]" within the meaning of 42 U.S.C. §§ 6903(15) and 6972(a)(1)(B).

## STATUTORY BACKGROUND

**The Clean Water Act**

31.     The Clean Water Act's purpose is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To accomplish that objective, Congress set the national goal that "the discharge of pollutants into navigable waters be eliminated." *Id.* § 1251(a)(1).

32.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source to waters of the United States

except in compliance with, among other conditions, a National Pollutant Discharge

Elimination System ("NPDES") permit issued by the EPA or an authorized state

pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

33.    The Georgia Department of Natural Resources has been delegated the

authority to issue NPDES permits in the state since 1974 by EPA. The Georgia

Environmental Protection Division within the state's Department of Natural

Resources administers Georgia's NPDES permitting program.

34.    Each violation of a NPDES permit, and each discharge of a pollutant

that is not authorized by a permit, is a violation of the Clean Water Act. 33 U.S.C.

§§ 1311(a), 1342, 1365(f); 40 C.F.R. § 122.41(a).

35.    The Clean Water Act defines "discharge of a pollutant" as "any

addition of any pollutant to navigable waters from a point source." 33 U.S.C. §

1362(12).

36.    The Clean Water Act defines "pollutant" to include "dredged spoil,

solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions,

chemical wastes, biological materials, radioactive materials, heat, wreaked or

discarded equipment, rock, sand, cellar dirt and industrial … waste discharged into

water." 33 U.S.C. § 1362(6).

37.     The Clean Water Act defines "point source" to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, [or] container … from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

38.     The Clean Water Act defines "navigable waters" as "waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7).

39.     The Clean Water Act defines "person" to include "an individual, corporation, partnership, association, State, [or] municipality …" 33 U.S.C. § 1362(5).

40.     Under Section 505(a)(1) of the Clean Water Act, any citizen may commence a civil action in federal court on their own behalf against any "person" who is alleged to be in violation of an "effluent standard or limitation" under the Act. 33 U.S.C. § 1365(a)(1).

41.     An "effluent standard or limitation" is defined to include:

(1) … an unlawful act under subsection (a) of section 1311 of this title; (2) an effluent limitation or other limitation under section 1311 or 1312 of this title; … (4) prohibition, effluent standard or pretreatment standards under section 1317 of this title; … [or] (6) a permit condition thereof issued under section 1342 of this title …

33 U.S.C. § 1365(f).

42.     The unpermitted discharge of a pollutant is an unlawful act under

Section 301(a) of the CWA, 33 U.S.C. §1311(a).

43.     Among other provisions of the Act, citizen suits may enforce the

provisions of and seek remedies for: (1) an unpermitted discharge in violation of

Section 301 of the Clean Water Act, 33 U.S.C. § 1311; (2) a failure to comply with

a prohibition, effluent standard, or pretreatment standards under Section 1317, 33

U.S.C. § 1317(b); and (3) the violation of a condition of a permit issued pursuant

to Section 402 of the Act, 33 U.S.C. § 1342, which includes NPDES permits. 33

U.S.C. § 1365(a), (f).

44.     The Clean Water Act's national pretreatment program governs the

discharge of industrial wastewater to municipal wastewater treatment plants, or

Publicly Owned Treatment Works ("POTWs"). 33 U.S.C. § 1317(b), (d). These

wastewater discharges into POTWs come from industrial facilities known as

"Industrial Users" or "Significant Industrial Users" and such discharges require

permits known as "pretreatment permits."

45.     By properly controlling the industrial wastewater that is received by

POTWs, the Clean Water Act pretreatment program "assures the public that

[industrial] dischargers cannot contravene the [Clean Water Act's] objectives of

eliminating or at least minimizing discharges of toxic and other pollutants simply by discharging indirectly through POTWs rather than directly to receiving waters." General Pretreatment Regulations for Existing and New Sources, 52 Fed. Reg 1586, 1590 (Jan. 14, 1987) (codified at 40 C.F.R. § 403 *et seq.*).

46.    The national pretreatment standards are codified at 40 C.F.R. § 403 *et seq.*, and among other things, "establishes responsibilities of … local government, industry and the public to implement National Pretreatment Standards to control pollutants which pass through or interfere with treatment processes in Publicly Owned Treatment Works (POTWs) or which may contaminate sewage sludge." 40 C.F.R. § 403.1(a).

47.    "Interference" means a Discharge which, alone or in conjunction with a discharge or discharges from other sources, both: (1) Inhibits or disrupts the POTW, its treatment processes or operations, or its sludge processes, use or disposal, and (2) is a cause of violation of any requirement of the POTW's NPDES permit or the prevention of sewage sludge use or disposal in compliance with certain statutory provisions, including Section 405 of the CWA and RCRA.  *See* 40 C.F.R. § 403.3(k).

48.     POTWs, in turn, must ensure that Industrial User discharges continually comply with the general prohibitions imposed under 40 C.F.R. § 403.5(a)(1) by "develop[ing] and enforc[ing] specific limits to implement the [§ 403.5(a)(1)] prohibitions…." 40 C.F.R. § 403.5(c)(1); *see also* 40 C.F.R. § 403.2(a) (objective of national pretreatment regulations is to, *inter alia,* "prevent the introduction of pollutants into POTWs which will interfere with the operation of a POTW, including interference with its use or disposal of municipal sludge"). Once these specific limits are developed, "[e]ach POTW with an approved pretreatment program shall continue to develop these limits as necessary and effectively enforce such limits" on Industrial User discharges to POTWs. *Id.*

49.     These national pretreatment requirements are likewise imposed on POTWs via NPDES permit conditions. Calhoun's NPDES Permit imposes such requirements on Calhoun, including those set forth in Part III.A.1 and Part III.A.2.

50.     Federal courts are authorized to issue injunctive relief under the citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365(a), and are authorized to issue declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

51.     In citizen suits, courts may assess civil penalties against violators not to exceed $66,712 per day per violation for all violations of the Clean Water Act that occur after November 2, 2015, where penalties are assessed after December 27, 2023. 33 U.S.C. §§ 1319(d), 1365(a); 40 C.F.R. §§ 19.1–19.4 (updating statutory penalties to adjust for inflation).

**The Resource Conservation and Recovery Act (RCRA)**

52.     RCRA's express purpose is to reduce or eliminate the generation of hazardous waste as expeditiously as possible, but that the waste "that is nevertheless generated should be treated, stored, or disposed of so as to minimize the present and future threat to human health and the environment." 42 U.S.C. § 6902(b).

53.     Section 7002(a)(1)(B) of RCRA allows affected persons to bring suit against "any person, … including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B).

54.     Federal Courts are authorized to issue injunctive relief under the citizen suit provision of RCRA, 42 U.S.C. § 6972(a), and are authorized to issue declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

## FACTUAL ALLEGATIONS

**Sludge Contamination from Unrestricted PFAS Discharges to the WPCP**

55.     The Calhoun WPCP lies next to the Oostanaula River at 205 Kirby Road, Calhoun, Gordon County, Georgia 30701, and is permitted to discharge up to 16 million gallons per day of treated effluent to the Oostanaula River. The City of Calhoun operates the Calhoun WPCP pursuant to NPDES Permit GA0030333 issued by the Georgia EPD. The most recent NPDES Permit was issued to the Calhoun WPCP in August 2023 with an effective date of September 1, 2023 (the "2023 NPDES Permit") as a renewal of the NPDES Permit effective March 1, 2016 (the "2016 NPDES Permit"). The substantive language and requirements imposed on the City of Calhoun under Part II.A.10, Part II.A.11, and Part III.A in both the 2016 NPDES Permit and the 2023 NPDES Permit are the same.

56.     Pursuant to Part III.A of both the 2023 NPDES Permit and the 2016 NPDES Permit, Calhoun administers a pretreatment program for Industrial Users, and Calhoun must both implement and comply with federal and state pretreatment

standards and requirements pertaining to discharges to the Calhoun WPCP from its industrial dischargers.

57.     Calhoun did not disclose the discharge of any PFAS from its WPCP sludge disposal operations in its NPDES Permit Application submitted to EPD prior to EPD's issuance of either the 2023 NPDES Permit or the 2016 NPDES Permit.

58.     The Calhoun WPCP employs an activated sludge biological treatment process. Treated effluent is discharged to the Oostanaula River via Outfall 001. This process generates sewage sludge (or biosolids) which has for many years been aerobically digested, dewatered in belt presses and disposed of at designated land application sites throughout Gordon County. This conventional wastewater treatment is incapable of removing or destroying PFAS, which are discharged into the Calhoun WPCP from Industrial Users, and accumulate in and contaminate the sludge generated by the WPCP.

59.     Since approximately the mid-1990's, Calhoun has generated, transported, and disposed of PFAS-contaminated sludge on designated disposal sites in Gordon County, sometimes referred to as land application sites or sludge fields. Between 2002 and 2022, Calhoun disposed of approximately 40,000 dry

tons of this contaminated sludge through land application at more than 50 locations in Gordon County. Calhoun's NPDES Permit imposes conditions and requirements on sludge handling, treatment and disposal, including those imposed under Part II.A.10, Part II.A.11, and Part III.A of the 2016 and 2023 NPDES Permits.

60.     Calhoun exercises control over the disposal of sludge generated by the WPCP and transports and disposes of this sludge through injection and/or spreading on these land application sites because it is cheaper than paying landfill fees to dispose of the sludge.

61.     Moss Land Company is the owner of three large parcels of real property in Gordon County that contain twelve sludge fields, designated as Field IDs 11-1 through 11-12 (collectively, "Sludge Field 11"). Sludge Field 11 is located adjacent to the Coosawattee River and a short distance upstream of the surface water intake providing the source water to Calhoun's Mauldin Road WTP.

62.     As part of Calhoun's sludge waste generation, treatment, handling, transport, and disposal operations, Calhoun and Moss Land Company have, for over twenty years, disposed of PFAS-contaminated sludge generated by the Calhoun WPCP on Sludge Field 11. Between 2002 and 2022, Calhoun and Moss Land Company disposed of nearly 28,000 dry tons of sludge – approximately 70%

of the sludge diverted from the Calhoun WPCP during this period – on Sludge

Field 11.

63.     For decades, Calhoun has allowed—and continues to allow—the

unrestricted discharge of PFAS in industrial process wastewater to the WPCP from

its Significant Industrial Users, rendering the Calhoun WPCP a generator of PFAS-

contaminated sludge.

64.     Most of Calhoun's Significant Industrial Users produce carpets, rugs,

rubber products and/or textiles, or perform carpet or rug finishing, such as

chemical blending, dyeing, or that employ the use of plastics, latex, resins,

surfactants, adhesives, printing, textile coatings or flame-retardants. PFAS are

widely used in these industries to repel water, oil, and/or stains or for other uses,

and are discharged to the Calhoun WPCP as part of industrial wastewater

discharges. In 2022, over 99% of Industrial User flows into the Calhoun WPCP

were from carpet-related facilities.

65.     An analysis of WPCP influent collected March 22, 2018 from one of

Calhoun's carpet-producer Significant Industrial Users confirmed the discharge of

PFAS in industrial wastewater to the Calhoun WPCP, including Perfluorooctanoic

acid (PFOA) at 26 parts per trillion ("ppt"), Perfluorooctane sulfonic acid (PFOS)

at 250 ppt, Perfluorobutane sulfonic acid (PFBS) at 180 parts per trillion ppt, and total PFAS of 555 ppt across 32 individual compounds, including Perfluorobutanoic acid (PFBA), Perfluoroheptanoic acid (PFHpA), Perfluorohexane sulfonic acid (PFHxS), Perfluorohexanoic acid (PFHxA), and Perfluoropentanoic acid (PFPeA).

66.     Because Calhoun's Significant Industrial Users have used and continue to use PFAS, and because Calhoun does not require these Industrial Users to limit or remove PFAS prior to discharging industrial wastewater to the WPCP, PFAS have entered and continue to enter the WPCP and contaminate the sludge generated by the WPCP. Consequently, the Calhoun WPCP has been since at least the 1990's, and continues to be, a generator of PFAS-contaminated sludge.

**Mobility, Persistence, and Toxicity of PFAS**

67.     PFAS refer to a class of thousands of synthetic chemicals that have been used in manufacturing since at least the 1940s that are known to be dangerous to human health and the environment. Due to their strong carbon-fluorine bonds, PFAS are highly stable and are resistant to heat and chemical reactions and repel both oil and water. As a result of these properties, PFAS have a variety of industrial and commercial applications, and are often used in textile and carpet

production and finishing to confer resistance to stain, soil, waters and/or oil, among other properties.

68.    Because the carbon-fluorine bond in PFAS is one of the strongest ever created, these chemicals are highly persistent once they are released to soil, water, or air. Once released into the environment, PFAS remain so long that current science is unable to estimate an environmental "half-life," or the amount of time it takes for 50-percent of the chemicals to disappear.

69.    PFAS are highly mobile and water soluble, and leach from soil to groundwater, making groundwater and surface water particularly vulnerable to contamination.  A major source of human exposure to PFAS is through ingestion of contaminated drinking water, and PFAS can bioaccumulate in organisms including fish and humans, with certain PFAS exhibiting a preference for accumulating within certain organs.

70.    Human exposure to two of the most often-studied PFAS, perfluorooctanoic acid (PFOA) and perfluorooctane sulfonate (PFOS), have been found to cause numerous adverse health impacts. The C8 Science Panel entailed an independent science panel of epidemiologists charged with reviewing the evidence and scientific literature linking certain PFAS to human diseases and health

conditions, based on its research on the Mid-Ohio Valley population exposed to PFAS from the E. I. du Pont de Nemours and Company chemical plant in Parkersburg, West Virginia. The C8 Science Panel concluded that there was a "Probable Link" to PFOA exposure and diagnosed high cholesterol, ulcerative colitis, thyroid disease, testicular cancer, kidney cancer, and pregnancy-induced hypertension. PFOA and PFOS have also been found to cause developmental effects to fetuses and infants, liver malfunction, hypothyroidism, lower birth weight and size, obesity, decreased immune response to vaccines, reduced hormone levels and delayed puberty.

71.     The Agency for Toxic Substances and Disease Registry ("ATSDR"), a division of the U.S. Department of Health and Human Services, studied the toxicological literature and developed "minimal risk levels" (or "MRLs" – daily human exposure that is likely to be without risk of noncarcinogenic effects) for certain PFAS for which there was sufficient reliable literature. In its 2021 report, ATSDR set minimal risk level reference doses of $3 \times 10^{-6}$ mg/kg/day for PFOA; and $2 \times 10^{-6}$ mg/kg/day for PFOS. The ATSDR has observed that higher exposure levels for individuals who reside in areas where PFAS such as PFOA contaminated both public and private water supplies have been documented.

72.     The U.S. Department of Health and Human Service's National

Toxicology Program (NTP) is engaged in the study of the potential human health

effects of PFAS through research with multiple facets, including experimental

rodent and cell-based testing systems, literature review, computer modeling, and

other methods. The NTP observed that ingestion – particularly through drinking

water – is the main way communities are exposed to PFAS. Recent studies suggest

that other forms of exposure, including inhalation and skin absorption, also

contribute to human exposure to PFAS. Animal studies detailed by the NTP report

a litany of troubling effects from exposure to certain PFAS, including brain cell

alteration, altered mitochondrial function, and immune hazards to humans from

exposure to PFOA and PFOS.

73.     PFAS pose a serious health threat when present in human drinking

water supplies. In 2016, EPA established a lifetime health advisory ("LHA") of 70

ppt for the combined concentrations of PFOA and PFOS in drinking water. In July

2022, EPA updated toxicity assessments for PFOA and PFOS, and replaced its

prior LHA in drinking water for these chemicals. EPA's 2022 LHA concentration

for drinking water is 0.004 ppt for PFOA and 0.02 ppt for PFOS, meaning that

there is *no* detectible concentration of either PFOA or PFOS in drinking water that is without adverse health risks.

74.     In March 2023, EPA proposed enforceable standards, or Maximum Contaminant Levels ("MCLs"), on public drinking water concentrations of PFOA and PFOS, following its determination that these chemicals are likely to cause cancer (e.g., kidney and liver cancer), and that there is no dose below which either chemical is considered safe. Based on a review of the best available health effects data, EPA proposed Maximum Contaminant Level Goals ("MCLGs") that address six PFAS, where an MCLG is the maximum level of a contaminant in drinking water at which no known or anticipated adverse effect on the health of persons would occur, allowing a margin of safety. EPA set the MCLG (or health-based value) for PFOA and PFOS at zero ppt, and the enforceable MCL for these contaminants at 4 ppt. In developing these drinking water MCLs at 4 ppt, EPA concluded that any exceedance of this limit requires action to protect public health, regardless of any mixture of other PFAS in which they are found.

75.     In its March 2023 proposed drinking water regulation, EPA concluded based on the agency's examination of health effects information that exposure to a mixture of PFAS in drinking water can be assumed to act in a dose-additive

manner, meaning that low levels of multiple PFAS that individually would not likely result in adverse health effects, when combined are expected to result in adverse health effects. Consequently, EPA has proposed an enforceable Hazard Index approach to protecting public health from mixtures of four PFAS compounds, including PFHxS, PFNA, PFBS, and HFPO-DA and its ammonium salts (also known as GenX) because of their known and additive toxic effects and occurrence in drinking water.

76.     PFAS precursors can also transform into PFOA and PFOS. For instance, fluorotelomer acrylates (FTAcs) and fluorotelomer alcohols (FTOHs) are precursor PFAS that under certain conditions can transform into perfluorinated carboxylic acids (PFCAs) – the class of compounds that includes PFOA. Hence, discharges of fluorotelomer acrylates and fluorotelomer alcohols into the environment can potentially transform into PFOA. N-methyl perfluorooctanesulfonamidoacetate (or N-MeFOSAA) is a PFAS and precursor that can be transformed into PFOS.

77.     PFHxA has been found to be as persistent as PFOA and PFOS in the environment, while being mobile in soil and groundwater – capable of contaminating the environment far beyond the original source of the discharge.

78.     Exposure to a threshold concentration of PFBA can induce increased thyroid and liver weight and cellular changes in both organs, changes in thyroid hormones, decreased cholesterol, and delayed development and decreased red blood cells and hemoglobin.

79.     Scientific literature suggests that exposure to a threshold amount of PFBS can result in lower body weight, delayed development and adverse female reproductive effects on offspring mothers as well as changes in thyroid hormone levels and cellular changes in kidneys.

80.     Human exposure to PFAS occurs in complex mixtures of multiple PFAS, yet at present, fewer than 50 individual PFAS (often fewer than 10) are commonly measured in environmental media.

81.     PFAS discharged into rivers and streams also threaten the aquatic ecosystem, where PFAS can exist throughout the water column and in river sediments, where they can expose benthic organisms, which in turn can serve as a food source for other aquatic, terrestrial or avian predators. PFAS have been shown to harm fish, amphibians, mollusks, and other aquatic invertebrates—resulting in developmental and reproductive impacts, behavioral changes, adverse effects to livers, disruption to endocrine systems, and weakened immune systems.

82.    PFAS further harm people who fish in PFAS-polluted streams and rivers because the chemicals accumulate in fish tissue once they are released into these waters. Fish consumption is a recognized human exposure pathway to PFAS. Studies have shown that those who eat PFAS-contaminated fish have higher PFAS concentrations in their blood. Because the chemicals can pose a risk to human health, many states such as Alabama have issued fish consumption advisories for certain waters, recommending limits on the number of fish that people should eat from PFAS-contaminated waterbodies.

**Defendants' Sludge Field 11 PFAS Discharges to the Coosawattee River, Contaminating Gordon County's Drinking Water Supply**

83.    The Coosawattee River is a navigable in fact water. The Coosawattee River's Designated Use is Drinking Water under Georgia's Water Use Classification from Mineral Springs Branch to its confluence with the Conasauga River. Ga. Comp. Rules & Regs. 391-3-6-.03(14). Calhoun's primary drinking water intake to the City's Maudlin Road Water Treatment Plant is located in this stretch of the Coosawattee River.

84.    Calhoun and Moss Land Company have disposed of thousands of tons of PFAS-contaminated sludge on Sludge Field 11, which sludge has contaminated

and continues to contaminate soil, groundwater and the Coosawattee River with PFAS.

85.     Calhoun and Moss Land Company have discharged extremely high concentrations of numerous PFAS compounds from no fewer than three (3) discrete conveyances, channels, or ditches located on Sludge Field 11, and Sludge Field ID 11-11 specifically, into the Coosawattee River without an NPDES Permit authorizing the discharges. These Conveyances (more fully defined below) collect and channel surface water flow from other areas of Sludge Field 11 and discharge PFAS directly to the Coosawattee River.

86.     Each of these Conveyances are point sources under the Clean Water Act, as is Sludge Field 11, including Sludge Field ID 11-11, and the sludge-spreading vehicles, trucks, and/or other sludge injection or disposal instruments and machinery from which PFAS are discharged to the Coosawattee River via groundwater.

87.     December 14, 2022 sampling confirms that Calhoun and Moss Land Company discharged PFAS from these Sludge Field 11 Conveyances to the Coosawattee River at the following approximate locations and at the following concentrations:

(1) **"Conveyance 1" [34°32'35"N, 84°52'06"W]**: PFOA (4,540 ppt); PFOS (11,500 ppt); PFBS (23,500 ppt); PFHxA (2,130 ppt); PFPeA (3,830 ppt); NEtFOSAA (47 ppt); PFBA (1,760 ppt); FBSA (2,320 ppt); PFDA (885 ppt); PFHpS (157 ppt); PFHpA (1,000 ppt); PFHxS (509 ppt); PFNA (707 ppt); PFPeS (818 ppt); PFUnDA (33.5 ppt); **Total PFAS** (53,099 ppt) [2]

(2) **"Conveyance 2" [34°32'28"N, 84°52'07"W]**: PFOA (15,200 ppt); PFOS (18,100 ppt); PFBS (151,000 ppt); PFHxA (10,300 ppt); PFPeA (19,500 ppt); NEtFOSAA (165 ppt); PFBA (7,900 ppt); FBSA (11,700 ppt); PFDA (775 ppt); PFHpS (352 ppt); PFHpA (4,610 ppt); PFHxS (1,750 ppt); PFNA (1,540 ppt); PFPeS (675 ppt); PFUnDA (82.5 ppt); **Total PFAS** (243,402 ppt)

(3) **"Conveyance 3" [34°32'22"N, 84°52'14"W]**: PFOA (8,840 ppt); PFOS (6,950 ppt); PFBS (98,500 ppt); PFHxA (8,280 ppt); PFPeA (12,100 ppt); NEtFOSAA (165 ppt); PFBA (5,970 ppt); FBSA (7,220 ppt); PFDA (132 ppt); PFHpS (197 ppt); PFHpA (3,550 ppt); PFHxS (1,320 ppt); PFNA (530 ppt); PFPeS (467 ppt); PFUnDA (82.5 ppt); **Total PFAS** (154,056 ppt)

---

[2] References herein to PFAS in their short form may also referred to as: 1H, 1H, 2H, 2H-Perfluorooctane sulfonic acid (6:2 FTS); 2H,2H,3H,3H-Perfluorooctanoic acid (5:3 FTCA) (FPePA); N-Ethylperfluorooctane sulfonamido acetic acid (NEtFOSAA); N-Methylperfluorooctane sulfonamido acetic acid (NMeFOSAA); Perfluorobutane sulfonic acid (PFBS); Perfluorobutanoic acid (PFBA); Perfluorobutylsulfonamide (FBSA); Perfluorodecanoic acid (PFDA); Perfluoroheptane sulfonic acid (PFHpS); Perfluoroheptanoic acid (PFHpA); Perfluorohexane sulfonic acid (PFHxS); Perfluorohexanoic acid (PFHxA); Perfluorononanoic acid (PFNA); Perfluorooctane sulfonamide (PFOSAm); Perfluorooctane sulfonic acid (PFOS); Perfluorooctanoic acid (PFOA); Perfluoropentane sulfonic acid (PFPeS); Perfluoropentanoic acid (PFPeA); Perfluoroundecanoic acid (PFUnDA).

Each discharge of each PFAS compound from each of Conveyance 1, Conveyance 2, and Conveyance 3 (collectively, the "Conveyances") is a separate violation of the Clean Water Act, which discharges are continuing.

88.    March 21, 2023 sampling confirms that Calhoun and Moss Land Company discharged PFAS from these Sludge Field 11 Conveyances to the Coosawattee River at the locations previously identified and at the following concentrations:

(1) **Conveyance 1**: PFOA (2,400 ppt); PFOS (1,730 ppt); PFBS (20,300 ppt); PFHxA (1,520 ppt); PFPeA (2,240 ppt); NEtFOSAA (16.5 ppt); 6:2 FTS (16.5 ppt); PFePA (16.5 ppt); NMeFOSAA (16.5 ppt); PFBA (1,220 ppt); FBSA (1,650 ppt); PFDA (125 ppt); PFHpS (55.5 ppt); PFHpA (698 ppt); PFHxS (293 ppt); PFNA (152 ppt); PFOSAm (8.25 ppt); PFPeS (112 ppt); PFUnDA (8.25 ppt); **Total PFAS** (32,495 ppt)

(2) **Conveyance 2**: PFOA (14,200 ppt); PFOS (11,500 ppt); PFBS (99,300 ppt); PFHxA (8,520 ppt); PFPeA (14,300 ppt); NEtFOSAA (16.5 ppt); 6:2 FTS (132 ppt); PFePA (132 ppt); NMeFOSAA (132 ppt); PFBA (6,190 ppt); FBSA (9,940 ppt); PFDA (454 ppt); PFHpS (299 ppt); PFHpA (4,260 ppt); PFHxS (1,920 ppt); PFNA (1,170 ppt); PFOSAm (66 ppt); PFPeS (568 ppt); PFUnDA (66 ppt); **Total PFAS** (172,621 ppt)

(3) **Conveyance 3**: PFOA (6,840 ppt); PFOS (3,150 ppt); PFBS (72,200 ppt); PFHxA (5,560 ppt); PFPeA (8,530 ppt) ; NEtFOSAA (66 ppt); 6:2 FTS (66 ppt); PFePA (66 ppt); NMeFOSAA (66 ppt); PFBA (3,840 ppt); FBSA (5,030 ppt); PFDA (94.7 ppt); PFHpS (125 ppt); PFHpA (2,530 ppt); PFHxS (1,020 ppt); PFNA (326 ppt); PFOSAm (33 ppt); PFPeS (421 ppt); PFUnDA (33 ppt); **Total PFAS** (109,666 ppt)

Each discharge of each PFAS compound from each of the Conveyances is a separate violation of the Clean Water Act, which discharges are continuing.

89.    PFAS precursors are PFAS compounds that degrade or transform to form other PFAS. The December 14, 2022 and March 21, 2023 sampling set forth above confirms that Calhoun and Moss Land Company are discharging PFAS precursors from Sludge Field 11, including N-MeFOSAA, which can transform in the environment into PFOS, a type of PFAS long known to be toxic and for which EPA has proposed mandatory drinking water limits.

90.    Calhoun and Moss discharged these PFAS as of at least December 14, 2022 and March 21, 2023 from Conveyance 1, Conveyance 2, and Conveyance 3 to the Coosawattee River without an NPDES Permit authorizing the discharges, and these discharges are continuing.

91.    The City of Calhoun has two Water Treatment Plants ("WTPs") providing drinking water to its customers. The Mauldin Road WTP has a capacity of 18 million gallons per day (MGD) and withdraws water from the Coosawattee River at a surface water intake located at approximately latitude and longitude N 34º 32' 2.037" – W 84º 53' 30.815", just downstream of Sludge Field 11 and Conveyance 1, Conveyance 2, and Conveyance 3. The Mauldin Road WTP

distributes treated drinking water to the Western one-half of Gordon County, as well as to nearby Floyd County, Georgia.

92.     As early as February of 2015, sampling of finished drinking water from the Mauldin Road WTP demonstrated that it contained toxic levels of PFAS, including PFOA at 30 ppt and PFBS at 370 ppt.  Sampling in November of 2015 confirmed unsafe levels of PFAS in the finished drinking water, including 40 ppt of PFOA and 360 ppt of PFBS.

93.     April 22, 2021 sampling performed by Georgia EPD of the Coosawattee River at two locations near the Mauldin Road WTP surface intake reported PFOA at 24 ppt and 61 ppt, and PFOS at 49 ppt and 5.1 ppt, respectively. Sampling of the Mauldin Road WTP's finished water on this date showed it contained 23 ppt of PFOA and 5.3 ppt of PFOS (28.3 ppt combined).

94.     May 1, 2021 sampling by the City of Calhoun on the Coosawattee River at the Mauldin Road WTP surface intake reported PFOA at 14 ppt and PFOS at 7.9 ppt (21.9 ppt combined). May 1, 2021 sampling by Georgia EPD on the Coosawattee River at the surface intake for the Mauldin Road WTP reported PFOA at 24 ppt and PFOS at 5.1 ppt (29.1 ppt combined).

95.     May 2, 2021 sampling by Calhoun of the Mauldin Road WTP Finished Water reported PFOA at 14 ppt and PFOS at 7.7 ppt (21.7 ppt combined). May 2, 2021 Georgia EPD sampling of the Mauldin Road WTP's Finished Water reported PFOA at 23 ppt and PFOS at 5.3 ppt (28.3 ppt combined).

96.     Sampling of finished water from the Mauldin Road WTP in January of 2023 found PFOA at 12 ppt and PFOS at 9.3 ppt (21.3 ppt combined), greatly exceeding EPA's updated LHA, proposed MCLs and levels considered safe for human consumption.

97.     This April 22, 2021 and May 1, 2021 sampling of the Coosawattee River at the Mauldin Road WTP surface intake are additional dates of Calhoun and Moss Land Company's unpermitted surface water discharges of PFOA and PFOS from Sludge Field 11, Conveyance 1, Conveyance 2, and Conveyance 3 to the Coosawattee River, and discharges from Sludge Field 11 via groundwater to the River.

98.     As established by Defendants' longstanding disposal of PFAS-contaminated sludge on Sludge Field 11 and the PFAS sampling results cited herein, Defendants have also, since at least September of 2018, and on at least

April 22, 2021, May 1, 2021, December 14, 2022, and March 21, 2023, discharged PFAS from Sludge Field 11 to the Coosawattee River via groundwater.

99.     Calhoun and Moss Land Company's Sludge Field 11 PFAS discharges are accumulating in and are contaminating Coosawattee River sediment. Sediment sampling collected on March 21, 2023 from the Coosawattee River bottom downstream of Calhoun's and Moss's PFOS discharges from Sludge Field 11 and the Conveyances reported PFOS at 1,220 and 1,330 nanograms per kilogram (ng/kg, or parts per trillion). In comparison, March 21, 2023 sampling of Coosawattee River sediment collected far upstream of Sludge Field 11 reported PFOS at concentrations below the applicable method detection limit, or the lowest concentration that can be reliably detected. These samples confirm PFOS in Coosawattee River sediment at concentrations approximately 1,000 parts per trillion higher downstream from Sludge Field 11 than reported in upstream sediment, caused by Calhoun's and Moss's unpermitted PFAS discharges.

100.   Because of Calhoun's past and continuing failure to prohibit PFAS from entering the WPCP from its Industrial User wastewater discharges to the WPCP and the WPCP's inability to remove or destroy PFAS, the WPCP generates PFAS-contaminated sludge.

101.   PFAS from Calhoun's ongoing and past sludge generation, and from Calhoun's and Moss Land Company's disposal of sludge from the Calhoun WPCP continues to enter soil and groundwater and continues to discharge to surface waters from Sludge Field 11 and other sludge disposal sites in the Coosawattee River Basin, Oostanaula River Basin, the Coosa River, and Weiss Lake downstream of these waters.

**Calhoun's Disposal of PFAS-Contaminated Sludge Throughout Gordon County, Contaminating its Drinking Water Supply**

102.   As set forth above, the City of Calhoun has two Water Treatment Plants ("WTPs") providing drinking water to its customers. In addition to the Mauldin Road WTP, the Brittany Drive WTP also supplies water to Gordon County and the region, with a capacity of 12.8 million gallons per day. The Brittany Drive WTP withdraws source water from at least two onsite groundwater wells referred to as "Well #3" and "Well #4", and the historic Big Spring, a natural freshwater spring at Dews Lake in Calhoun. The Brittany Drive WTP distributes drinking water throughout the Eastern one-half of Gordon County, Georgia, including over 10,000 residential homes, hundreds of commercial businesses, approximately two dozen industrial operations, a hospital, and approximately 8

schools. The Brittany Drive WTP also provides water to wholesale customers, including Pickens County, Chatsworth, and Talking Rock.

103.   The historic Big Spring provides roughly half the Brittany Drive WTP's source water. At least one commercial bottling company also draws water from the historic Big Spring.

104.   As of October 2021, Calhoun estimated that about 1,640 homes located within the Brittany Drive WTP service area out of a total of 4,118 unserved parcels may rely on private groundwater wells for drinking water.

105.   Since the mid-1990's, Calhoun has disposed of PFAS-contaminated sludge generated by the WPCP on sludge fields throughout the region. In addition to disposing of PFAS-contaminated sludge on Sludge Field 11 and other sites adjoining the Coosawattee River, Calhoun has disposed of this sludge on more than 6,000 acres of land throughout Gordon County, with thousands of tons disposed of annually beginning in the 1990's and continuing to at least September 2023. Many of these sludge fields, including those bearing Site ID Numbers 2, 4, 5–6, 10, 11, 13–20, 26, 27, 32, 36–40, 47, and 53–55, are situated near Calhoun's Brittany Drive WTP, its onsite groundwater wells and the historic Big Spring.

106.    Certain of these sludge fields, including those bearing Site ID Numbers 6, 10, 11, 14, 18, and 33 are located in whole or in part within 4 (four) miles of the Brittany Drive WTP, its onsite wells and the historic Big Spring. Sludge fields bearing Site ID Numbers 10, 18, 14 and 33 are located within 2 (two) miles of the Brittany Drive WTP and its onsite wells or the historic Big Spring. Sludge fields bearing Site ID Numbers 10, 14 and 18 are within one (1) mile of the Brittany Drive WTP, its onsite wells, and the Big Spring.

107.    May 2, 2021 sampling by Calhoun of the Brittany Drive WTP's finished drinking water reported concentrations of PFOA at 25 ppt, and PFOS at 30 ppt (55 ppt combined) drawn from onsite Well #4. Georgia EPD sampling of the Brittany Drive WTP's finished drinking water that same day reported concentrations of PFOA at 42 ppt and PFOS at 15 ppt (58 ppt combined) drawn from Well #4.

108.    The City of Calhoun's May 2, 2021 sampling of Well #4 reported PFOA at 23 ppt, PFOS at 32 ppt (57 ppt combined), and sampling at the historic Big Spring intake to the Brittany Drive WTP reported concentrations of PFOA at 21 ppt and PFOS at 26 ppt (47 ppt combined). EPD sampling conducted May 2, 2021 from Well #4 reported PFOA at 42 ppt and PFOS at 17 ppt (59 ppt

combined), and sampling from the Brittany Drive WTP's Big Spring intake reported PFOA at 34 ppt and PFOS at 13 ppt (47 ppt combined). Prior EPD sampling conducted April 22, 2021 from Brittany Drive Well #4 reported PFOA at 44 ppt, and PFOS at 17 ppt. EPD testing from the historic Big Spring on April 22, 2021 reported PFOA at 34 ppt, and PFOS at 13 ppt.

109.   August 18, 2021 sampling of the Brittany Drive Well #3 conducted by Georgia EPD reported PFOA at 44 ppt, PFOS at 20 ppt, and PFBS at 74 ppt, among other PFAS compounds. EPD sampling of Brittany Drive Well #4 on the same date reported PFOA at 45 ppt, PFOS at 19 ppt, and PFBS at 71 ppt, among other PFAS. EPD sampling collected at the historic Big Spring that same day reported PFOA at 45 ppt, PFOS at 19 ppt, and PFBS at 68 ppt, among other PFAS compounds.

110.   Calhoun's and Gordon County's groundwater and surface water drinking water supply is contaminated with PFAS, and Calhoun's disposal of PFAS-contaminated sludge throughout Gordon County is the primary cause of this contamination. Calhoun is contaminating soil, groundwater, and surface water with high concentrations of numerous PFAS compounds, including PFOS, PFOA, and PFBS.

111.   The Calhoun WPCP is a generator of PFAS-contaminated sludge caused by its failure to prevent PFAS from entering the WPCP from its Industrial User wastewater discharges. Calhoun has disposed of PFAS-contaminated sludge generated by the WPCP on the above-identified sludge fields, one or more of which are the cause of PFAS contamination of Brittany Drive WTP's finished drinking water, Well #3, Well #4, and the historic Big Spring.

112.   In addition to providing water to the Brittany Drive WTP, at least one commercial bottled water company sources its water exclusively from the historic Big Spring in Calhoun. May 2, 2021 sampling conducted by the City of Calhoun reported "in Bottle" concentrations of PFOA at 20 ppt and PFOS at 22 ppt (42 ppt combined) sourced from the historic Big Spring.

**Calhoun's and Moss Land Company's Interstate PFAS Contamination**

113.   As a result of their waste generation, treatment, transport, disposal and discharge activities set forth above, Calhoun and Moss Land Company are contaminating the Coosawattee River and downstream waters with PFAS, including the Oostanaula River, the Coosa River, Weiss Lake, Alabama, and the Coosa River downstream from Weiss Lake in Alabama. This contamination is continuing as of the date of this Complaint.

114.   The Coosawattee River flows past Sludge Field 11 and Calhoun's Mauldin Road WTP's surface water intake, where it eventually joins with the Conasauga River to form the Oostanaula River. The Oostanaula River flows in a generally south to southwesterly direction through the City of Calhoun towards Rome, Georgia, where the Oostanaula joins with the Etowah River at Rome to form the Coosa River. From there, the Coosa River flows in a southwesterly direction to Alabama, where it drains to Weiss Lake, Alabama.

115.   The City of Centre, Alabama's drinking water intake is located on Weiss Lake. The Lake occupies approximately 30,200 acres, primarily fed by the Chattooga River and the Coosa River from Georgia. Weiss Lake is home to an abundance of fish species, including crappie, largemouth bass, and striped bass, some of which may be fished year-round. Weiss Lake has been referred to as the "Crappie Capitol of the World," and is an important economic driver for the surrounding community as a recreation destination, with numerous hotels, marinas, campgrounds, and bait and tackle stores located thereon. Residents and visitors routinely consume fish caught from Weiss Lake. Downstream of Weiss Lake is the City of Gadsden, Alabama's drinking water intake, on the Coosa River.

116.   PFAS contamination from Calhoun and Moss Land Company, therefore, discharges to the Coosawattee River, and flows through the Oostanaula River, Coosa River, and to Weiss Lake, polluting the drinking water source for downstream communities who have surface water intakes on these waterbodies, including the City of Rome, Georgia, whose surface water intake is on the Oostanaula River, the City of Centre Alabama, whose surface water intake is at Weiss Lake, and the City of Gadsden, Alabama, whose surface water intake is on the Coosa River that flows downstream from Weiss Lake.

## COUNT I:

**Discharges of Pollutants to Waters of the United States Without a NPDES
Permit in Violation of the Clean Water Act (33 U.S.C. § 1311)
(City of Calhoun and Moss Land Company)**

117.   Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

118.   Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from a point source to Waters of the United States except in compliance with various enumerated sections of the Clean Water Act. Among other things, Section 301(a) of the Clean Water Act prohibits discharges not authorized by, or in violation of the terms of, a NPDES permit issued pursuant

to Section 402 of the Act, 33 U.S.C. § 1342. Each discharge of a pollutant that is not authorized by a NPDES permit or is in violation of a NPDES permit constitutes a separate violation of the Clean Water Act. 33 U.S.C. § 1319(d).

119.   The State of Georgia has been delegated authority to implement the permitting programs of the Clean Water Act by EPA, including the NPDES permit program, pursuant to 33 U.S.C. § 1342(b). EPD is the state water pollution control agency for purposes of the CWA as set forth herein and administers statutory and regulatory authority implementing the CWA's permitting programs within the State of Georgia. *See, e.g.*, O.C.G.A. § 12-5-30.

120.   A citizen suit, pursuant to 33 U.S.C. § 1365(a)(1), may be brought for the discharge of pollutants into waters of the United States without a permit or in violation of a permit in violation of Section 301 of the Clean Water Act. 33 U.S.C. § 1365(f). There is also Clean Water Act jurisdiction where pollutants are discharged from a point source to navigable surface waters through hydrologically connected groundwater, where the discharge is the functional equivalent of a direct discharge to navigable waters.

121.   The Coosawattee River is a navigable in fact waterway. The Coosawattee River and its tributaries are waters of the State of Georgia and waters of the United States under the Clean Water Act.

122.   PFAS are pollutants under the Clean Water Act. 33 U.S.C. § 1362(6), which defines "pollutant" to include chemical, industrial, municipal, and agricultural waste, sewage sludge and solid waste. *Id.* The PFAS that the Calhoun WPCP receives from its Significant Industrial Users are chemical and industrial waste. PFAS, including but not limited to PFOA, PFOS, PFPeA, PFHxA, and precursors are therefore "pollutant[s]" under the Clean Water Act. 33 U.S.C. § 1362(6).

123.   PFAS, including but not limited to PFOA, PFOS, PFHxS, PFNA, PFBS are a "toxic pollutant" under the Clean Water Act. 33 U.S.C. § 1362(13).

124.   Conveyance 1, Conveyance 2, and Conveyance 3 are discernible, confined and discrete conveyances from which PFAS are being discharged from Sludge Field 11 to the Coosawattee River. The Conveyances are therefore a "point source" under the Clean Water Act. 33 U.S.C. § 1362(14).

125.   Sludge Field 11, including Sludge Field ID 11-11, and the sludge-spreading vehicles, trucks, and/or other sludge injection or disposal instruments

and machinery from which PFAS are being discharged to the Coosawattee River
via groundwater are each a "point source" under the Clean Water Act. 33 U.S.C.
§ 1362(14).

126. Calhoun did not disclose its PFAS discharges from Sludge Field 11 to
the Coosawattee River to EPD prior to issuance of either the 2016 NPDES Permit
or the 2023 NPDES Permit.

127. Georgia EPD did not reasonably contemplate Calhoun's and Moss
Land Company's PFAS discharges from Sludge Field 11 to the Coosawattee River.

128. NPDES Permit No. GA0030333 does not authorize Calhoun to
discharge PFAS from Sludge Field 11, Conveyance 1, Conveyance 2, or
Conveyance 3 to the Coosawattee River. Calhoun, therefore, has discharged and
continues to discharge PFAS from Sludge Field 11, Conveyance 1, Conveyance 2,
and Conveyance 3 without an NPDES permit authorizing such discharges.

129. Moss Land Company does not possess a NPDES permit authorizing
PFAS discharges from Sludge Field 11, Conveyance 1, Conveyance 2, or
Conveyance 3 to the Coosawattee River.

130. Each of Calhoun's and Moss Land Company's PFAS discharges from
Sludge Field 11, Conveyance 1, Conveyance 2, and Conveyance 3 to the

Coosawattee River without authorization under a NPDES permit is a separate and distinct violation of the Clean Water Act. 33 U.S.C. §§ 1311, 1319(d), 1342.

131.   Calhoun's and Moss Land Company's unpermitted PFAS discharges commenced at least as of September of 2018 as a result of Defendants' longstanding disposal of thousands of tons of PFAS-contaminated sludge on Sludge Field 11, which are contaminating soil, groundwater and surface water with PFAS, and prior to April 21, 2021 and May 1, 2021, when sampling of the Coosawattee River at the Mauldin Road WTP surface intake reported Calhoun's and Moss Land Company's unpermitted surface water discharges of PFAS to the Coosawattee River from Sludge Field 11 and each of the Conveyances.

132.   December 14, 2022 sampling from Sludge Field 11 and Conveyance 1, Conveyance 2, and Conveyance 3 reported numerous PFAS discharges to the Coosawattee River by Calhoun and Moss Land Company, including but not limited to: PFOA, PFOS, FBSA, PFBA, PFBS, PFPeA, PFPeS, PFHxA, PFHxS, PFHpA, PFHpS, PFNA, PFDA, NEtFOSAA, and PFUnDA. Discharge concentrations include:

*[see next page]*

| Sludge Field 11 Conveyances | December 14, 2023 Discharge Concentrations (in parts per trillion (ppt) across 15 analytes) |
|---|---|
| **Conveyance 1** | 53,099 ppt (PFOA 4,540 ppt; PFOS 11,500 ppt) |
| **Conveyance 2** | 243,402 ppt (PFOA 15,200 ppt; PFOS 18,100 ppt) |
| **Conveyance 3** | 156,848 ppt (PFOA 8,840 ppt; PFOS 6,950 ppt) |

These unpermitted PFAS discharges are continuing.

133.   March 21, 2023 sampling from Sludge Field 11 and Conveyance 1, Conveyance 2, and Conveyance 3 reported numerous PFAS discharges to the Coosawattee River by Calhoun and Moss Land Company, including but not limited to: PFOA, PFOS, FBSA, PFBA, PFBS, PFPeA, PFPeS, PFHxA, PFHxS, PFHpA, PFHpS, PFNA, PFDA, NEtFOSAA, PFUnDA, 6:2 FTS, PFePA, NMeFOSAA, and PFOSAm. Discharge concentrations include:

*[see next page]*

| Sludge Field 11 Conveyances | March 21, 2023 Discharge Concentrations (in ppt across 19 analytes) |
|---|---|
| Conveyance 1 | 32,495 ppt (PFOA 2,400 ppt; PFOS 1,730 ppt) |
| Conveyance 2 | 172,621 ppt (PFOA 14,200 ppt; PFOS 11,500 ppt) |
| Conveyance 3 | 112,939 ppt (PFOA 6,840 ppt; PFOS 3,150 ppt) |

These unpermitted PFAS discharges are continuing.

134.   Defendants Calhoun and Moss Land Company have also, since at least September 2018, discharged PFAS to the Coosawattee River from sludge-spreading vehicles, trucks, and/or sludge injection or disposal instruments and machinery via the groundwater at Sludge Field 11, which is hydrologically connected to the Coosawattee River.

135.   Due to the geology, hydrogeology and hydrology at Sludge Field 11 and the nature, persistence, mobility, and other properties of PFAS, these discharges of PFAS to the Coosawattee River from these point sources through groundwater along Sludge Field's 11 border with the Coosawattee River constitute the functional equivalent of a direct discharge, as, among other factors, the transit

time and distance traveled are short, and any chemical alteration from a point source such as sludge injection device to groundwater prior to discharge to the River is only alteration from one PFAS compound to another PFAS.

136.   Defendants Calhoun and Moss Land Company's discharges of PFAS to the Coosawattee River from the sludge disposed of on Sludge Field 11 through hydrologically connected groundwater constitute the "functional equivalent" of a direct discharge to surface waters requiring a NPDES permit authorizing such discharges. Neither Calhoun nor Moss Land Company possess such a NPDES permit.

137.   Defendants Calhoun and Moss Land Company's unpermitted PFAS discharges into the Coosawattee River have harmed members of the Coosa River Basin Initiative by impairing their use and enjoyment of the waters downstream of these PFAS discharges, including the Coosawattee River, the Oostanaula River, the Coosa River, their respective tributaries, and Weiss Lake, including but not limited to their use of these waters as a source of drinking water.

138.   These are illegal and unpermitted discharges. The requirement for a NPDES permit authorizing discharges of PFAS from Moss Land Company's

property arose at the time that pollutants were first being discharged to surface waters, and each day since that time is a violation of the Clean Water Act.

139.   Calhoun and Moss's continuing unpermitted discharges alleged herein harm the waters of Georgia, waters of the United States, the Coosa River Basin Initiative, and its members, for which harm the Coosa River Basin Initiative has no plain, speedy, or adequate remedy at law.

140.   The Court should issue an enforcement order and injunction order to Defendants Calhoun and Moss Land Company to cease their discharges of PFAS from Sludge Field 11, the Conveyances, and via groundwater to the Coosawattee River.

141.   The Court should assess civil penalties against Defendants Calhoun and Moss Land Company for violations of Count I of this Complaint under Sections 309(d) and 505 of the Clean Water Act, 33 U.S.C. §§ 1319(d) and 1365 for each day on which illegal and unpermitted discharges have occurred or will occur after the date of this Complaint.

## COUNT II:

### Calhoun's Violations of its NPDES Permit
### and Clean Water Act
### (City of Calhoun)

142. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

143. As set forth above, the Calhoun WPCP is governed by NPDES Permit No. GA0030333, which became effective September 1, 2023 as a renewal of the 2016 NPDES Permit. Calhoun is in violation of its NPDES Permit, and each instance constitutes a separate violation of the Clean Water Act. 33 U.S.C. § 1319(d); NPDES Permit, Part II.B.1 ("The permittee must comply with this permit. Any noncompliance is a violation of the Federal [Clean Water] Act, State Act, and the State Rules ….")

144. Calhoun's 2023 NPDES Permit and its 2016 NPDES Permit (collectively, "NPDES Permit") at Part II.A imposes the following among its MANAGEMENT REQUIREMENTS:

10. DUTY TO MITIGATE

The permittee shall take all reasonable steps to minimize or prevent any discharge or sludge disposal which might adversely affect human health or the environment.

NPDES Permit, Part II.A.10.

145.   Calhoun has violated and is in violation of Part II.A.10 of its NPDES Permit by, among other things: failing to take all reasonable steps to minimize or prevent any discharge or sludge disposal that "might adversely affect human health or the environment;" continuing to generate PFAS-contaminated sludge at the WPCP; failing to remove PFAS-contaminated sludge from Sludge Field 11; and failing to prevent ongoing PFAS discharges from Sludge Field 11, the Conveyances, and via groundwater to the Coosawattee River. Calhoun's failure to take all reasonable steps to minimize or prevent these ongoing discharges and sludge disposal activities might adversely affect human health at the Mauldin Road WTP, whose surface intake is directly downstream of Calhoun's PFAS contamination at Sludge Field 11, and might adversely affect the environment by causing PFAS contamination of the Coosawattee River, thereby exposing fish, benthic organisms and wildlife to harmful contamination, including PFOS accumulating in river sediment.

146.   Calhoun's NPDES Permit at Part II.A further imposes the following among its MANAGEMENT REQUIREMENTS:

11.   NOTICE CONCERNING ENDANGERING WATERS OF THE
      STATE

> Whenever … any toxic … substance, or any other substance
> which would endanger downstream users of the waters of the
> State or would damage property, is discharged to such waters, or
> is so placed that it might flow, be washed, or fall into them, it
> shall be the duty of the person in charge of such substances at the
> time to forthwith notify EPD in person or by telephone of the
> location and nature of such danger, and it shall be the person's
> further duty to immediately take all reasonable and necessary
> steps to prevent injury to property and downstream users of said
> water.

NPDES Permit, Part II.A.11.

147.   PFAS, including but not limited to PFOA, PFOS, PFHxS, PFNA, and

PFBS, are toxic substances that endanger and injure downstream users of waters of

the State of Georgia and Waters of the United States, including the Coosawattee

River and Oostanaula River.

148.   Calhoun is in violation of Part II.A.11 of its NPDES Permit by failing

to take all reasonable and necessary steps to prevent injury to property and

downstream users of the waters of the Coosawattee River and Oostanaula River

resulting from the PFAS-contaminated sludge disposed of in the Coosawattee

River watershed.

149.   Reasonable and necessary steps to prevent injury to property and downstream users include: (i) ceasing PFAS discharges from Sludge Field 11, the Conveyances, and from groundwater to the Coosawattee River a short distance upstream of the Mauldin Road WTP surface water intake; (ii) requiring the WPCP's Industrial Users to cease discharges of PFAS to the Calhoun WPCP which contaminate municipal sludge generated by the WPCP; and (iii) ceasing any ongoing disposal of PFAS-contaminated sludge on Sludge Field 11 and remediating contaminated soil, groundwater and surface water. Given the mobility, environmental persistence, and toxicity of PFAS, these steps are reasonable and necessary to protect property and the people who use and enjoy the Coosawattee River, Oostanaula River, Coosa River, their tributaries, Weiss Lake, and downstream waters.

150.   Part III.A of Calhoun's NPDES Permit provides that the "permittee's approved pretreatment program shall be enforceable through this permit" and Part III.A.2.b requires Calhoun to, among other things, administer its approved pretreatment program by:

> Enforcing and obtaining appropriate remedies for noncompliance by any industrial user with any applicable pretreatment standard or requirement

defined by Section 307(b) and (c) of the [CWA], 40 CFR Part 403.5 and 403.6 or any State or local requirement, whichever is more stringent.

151.   Part III.A.2.c of Calhoun's NPDES Permit also requires Calhoun to revise the adopted local limits based on technical analyses to ensure the local limits continue to prevent, among other things, "Municipal sludge contamination." *see also* 40 C.F.R. § 403.5(c)(1) (POTWs shall develop and enforce specific limits to implement prohibitions on, *inter alia,* Interference); GA. COMP. R. & REGS. § 391-3-6-.09(9)(a)(6) ("The POTW shall have the authority … to immediately and effectively halt or prevent any discharge of pollutants into the POTW which reasonably appears to present an imminent and substantial endangerment to the health or welfare of persons").

152.   Calhoun has violated, and continues to violate, Part III.A.2.b and 2.c of its NPDES Permit, as well as the above-referenced EPA and Georgia regulations, by failing to prevent and/or enforce prohibited discharges of PFAS into the POTW which cause Interference and otherwise interfere with Calhoun's sludge use and disposal; failing to revise local limits to prevent the contamination and disposal of municipal sludge with PFAS; and through its failure to prevent

discharges of PFAS into the POTW which present an imminent and substantial endangerment to the health or welfare of persons.

153.   The Clean Water Act provides that citizen suits may be brought for violations of "an effluent standard or limitation," defined to include "a permit or condition" thereof. 33 U.S.C. § 1365(f). "Any permit noncompliance constitutes a violation of the Clean Water Act and is grounds for enforcement action." 40 C.F.R. § 122.41(a). By violating express conditions of its NPDES Permit, Calhoun is in continuing violation of the Clean Water Act.

154.   Each of the foregoing acts and failures to act is a separate violation of the Clean Water Act. 33 U.S.C. §§ 1311, 1319(d), 1342.

155.   Calhoun's violations of its NPDES Permit commenced: (i) at least as of March 22, 2018 and March 28, 2018, when Significant Industrial User wastewater discharge sampling confirmed that Calhoun failed and continues to fail to prohibit the unrestricted discharge of PFAS into the WPCP from its Significant Industrial Users, thereby contaminating municipal sludge with PFAS; (ii) at least as of September 1, 2018, corresponding to the dates when Calhoun and Moss have disposed of PFAS-contaminated sludge generated by the WPCP on Sludge Field 11; (iii) at least as of May 1, 2021, when Georgia EPD's surface water sampling at

the Mauldin Road WTP's surface intake reported high concentrations of PFOA and PFOS in the Coosawattee River a short distance downstream of Calhoun's Sludge Field 11 PFAS discharges and discharges via the Conveyances; and (iv) at least as of December 14, 2022 and March 21, 2023, when surface water sampling confirmed Calhoun's discharges of massive concentrations of numerous PFAS from Sludge Field 11 and the Conveyances directly to the Coosawattee River caused by municipal sludge contamination by PFAS and Calhoun's failure to take all reasonable steps to prevent such PFAS discharges. Calhoun's NPDES Permit violations are continuing.

156.   Calhoun's violations of its NPDES Permit and the Clean Water Act have harmed members of the Coosa River Basin Initiative. Calhoun's violations have impaired members' use and enjoyment of the waters downstream of the Calhoun's PFAS discharges from Sludge Field 11 and the Conveyances, including the Coosawattee River, the Oostanaula River, the Coosa River, Weiss Lake, and downstream waters.

157.   Calhoun's violation of its NPDES Permit and the Clean Water Act harm the waters of the state of Georgia, Waters of the United States, the Coosa

River Basin Initiative, and its members, for which harm the Coosa River Basin Initiative has no plain, speedy, or adequate remedy at law.

158.   The Court should issue an enforcement order and injunction order to Defendant City of Calhoun to cease its violations of its NPDES Permit.

159.   The Court should assess civil penalties against Defendant City of Calhoun for each of its violations set forth in Count II of this Complaint under Section 309(d) and 505 of the Clean Water Act, 33 U.S.C. §§ 1319(d) and 1365.

## COUNT III:

### Defendants' Violations of the
### Resource Conservation and Recovery Act (RCRA)
### (City of Calhoun, Moss Land Company)

160.   Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

161.   Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), authorizes citizens to bring suit "against any person … including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of

any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."

162.   The term "solid waste" means "any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, … and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities .…" 42 U.S.C. § 6903(27).

163.   The term "sludge" means "any solid, semisolid or liquid waste generated from a municipal, commercial, or industrial wastewater treatment plant, water supply treatment plant, or air pollution control facility or any other such waste having similar characteristics and effects." 42 U.S.C. § 6903(26A).

164.   The term "hazardous waste" means "a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may – (A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed." 42 U.S.C. § 6903 (5).

165.   Calhoun's WPCP PFAS-contaminated sludge and PFAS, including PFOA and PFOS and precursors, are "solid waste" and "hazardous waste" as defined in RCRA, 42 U.S.C. §§ 6903(5), (27).

166.   The term "disposal" means "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3).

167.   As set forth above including the Factual Allegations, Calhoun has failed to prevent unrestricted PFAS discharges to the WPCP in wastewater from its Significant Industrial Users who use, handle and discharge PFAS as demonstrated by March 22 and March 28, 2018 Industrial User wastewater sampling. The Calhoun WPCP is therefore a past and a present generator of PFAS-contaminated sludge.

168.   As set forth above including the Factual Allegations, the City of Calhoun is also a past and present owner and operator of the WPCP, which is a treatment, storage or disposal facility for PFAS-contaminated sludge. The City of Calhoun has contributed and is contributing to the past and present handling,

storage, transport, treatment, and disposal of PFAS-contaminated sludge on designated sludge fields including Sludge Field 11, and others including sludge fields bearing Site ID Numbers 18, 14, 10, and 33 in a manner which may present an imminent and substantial endangerment to health or the environment, including to those who use and consume water from the Mauldin Road Water Treatment Plant whose main intake is on the Coosawattee River, and the Brittany Drive Water Treatment Plant which draws water from Well #3, Well #4 and the historic Big Spring.

169.   As set forth above including the Factual Allegations, Moss Land Company has contributed and is contributing to the past and present handling, storage, treatment and disposal of PFAS-contaminated sludge on Sludge Field 11 in a manner which may present an imminent and substantial endangerment to health or the environment, including to those who use and consume water from the Mauldin Road Water Treatment Plant whose intake is on the Coosawattee River.

170.   The continued presence and entry into the environment of PFAS to groundwater (including wells and springs supplying source water to the Brittany Drive WTP, the historic Big Spring and private residential drinking water wells near Calhoun's and Moss Land Company's sludge land application fields), surface

water (including the drinking water supplies to the Mauldin Road WTP), and river sediment such as PFOS reported in river sediment downstream of Calhoun's and Moss's PFAS discharges to the Coosawattee River from Sludge Field 11 and the Conveyances may present an imminent and substantial endangerment to: (i) persons who rely on those waters for drinking water; (ii) persons who fish, swim, paddle, and otherwise recreate in those waters; (iii) persons who consume fish, shellfish, or game located in those waters; and (iv) the aquatic and terrestrial ecosystem, including the fish, shellfish and other aquatic life residing in those waters, and birds or wildlife consuming fish or shellfish that are exposed to Calhoun and Moss Land Company's PFAS contamination.

171.   As set forth above including the Factual Allegations, Calhoun's and Moss Land Company's imminent and substantial endangerment to health and the environment is established by, among other things: (i) Calhoun and Moss Land Company's generation, transportation, handling, treatment  and disposal of nearly 28,000 dry tons of the Calhoun WPCP's PFAS-contaminated sludge on Sludge Field 11 from 2002 to 2022; (ii) Calhoun's generation, transportation, handling, treatment, and disposal of PFAS-contaminated sludge from the WPCP to sludge fields bearing Site ID Numbers 18, 14, 10, and 33 and/or other sludge fields to be

established at trial; (iii) December 14, 2022 and March 21, 2023 surface water sampling establishing Calhoun's and Moss's discharges of massive PFAS concentrations from Sludge Field 11 and the Conveyances to the Coosawattee River upstream of the Mauldin Road WTP's surface intake; (iv) Georgia EPD's and the City of Calhoun's April 22, 2021 and May 1-2, 2021 surface water sampling of the Coosawattee River at the Mauldin Road WTP's surface intake and Finished Water reporting PFOS and PFOA well in excess of their corresponding EPA drinking water Health Advisory Levels (HALs) and proposed Maximum Contaminant Level (MCL) concentrations; (v) Georgia EPD's and the City of Calhoun's May 2021 sampling of Brittany Drive WTP Finished Water, at the Brittany Drive WTP's Big Spring intake, and Well #4 reporting PFOS and PFOA vastly exceeding their corresponding HAL and proposed MCL concentrations; (vi) May 2021 sampling of bottled water sourced from the historic Big Spring reporting PFOA and PFOS vastly exceeding applicable HAL and MCL concentrations; and (vii) March 21, 2023 Coosawattee River sediment sampling collected downstream of Calhoun's and Moss's PFAS contamination of Sludge Field 11 establishing PFOS over 1,000 ng/Kg higher than upstream sediment concentrations.

172.   Calhoun's RCRA violations commenced at least as of March 22, 2018 and March 28, 2018, when Industrial User wastewater sampling confirmed that Calhoun generated PFAS-contaminated sludge by allowing and failing to prevent ongoing PFAS industrial wastewater contamination of municipal sludge at the WPCP, and each date on which Calhoun engaged in or contributed to the transport, handling, storage, treatment and/or disposal of WPCP sludge on Sludge Field 11 and others including sludge fields bearing Site ID Numbers 18, 14, 10, and 33, and failed to remediate and prevent PFAS from entering soil, groundwater, springs, and surface waters.

173.   Moss Land Company's RCRA violations commenced at least as of January 1, 2002 and each date on which Moss engaged in or contributed to the transport, handling, storage, treatment and/or disposal of WPCP sludge on Sludge Field 11 and failed to remediate and prevent PFAS from entering soil, groundwater, springs, and surface waters including the Coosawattee River.

174.   Calhoun's and Moss's RCRA violations are continuing as of the date of this Complaint.

175.    Calhoun's and Moss's RCRA violations harm the Coosa River Basin Initiative and its members, for which harm the Coosa River Basin Initiative has no plain, speedy, or adequate remedy at law.

176.    Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), empowers the Court to compel any person referred to in 42 U.S.C. § 6972(a)(1)(B) "to take such … action as may be necessary" to eliminate the endangerment.

177.    Section 7002(e) of RCRA, 42 U.S.C. § 6972(e), authorizes the Court to award costs of litigation (including reasonable attorney and expert fees) to the prevailing or substantially prevailing party, whenever the court determines such an award is appropriate.

178.    The Court should issue an enforcement order and injunction order to Defendant City of Calhoun and Defendant Moss Land Company to cease and remediate their RCRA violations. 42 U.S.C. § 6972(a).

179.    The Court should assess civil penalties against Defendant City of Calhoun and Defendant Moss Land Company for their violations of Count III of this Complaint under 42 U.S.C. § 6928(g); 40 C.F.R. §§ 19.1 – 19.4 (updating statutory penalties to adjust for inflation).

## **REQUEST FOR RELIEF**

Wherefore, Plaintiff Coosa River Basin Initiative respectfully requests that this Court:

A.      Enter a declaratory judgment finding that Defendants Calhoun and Moss Land Company have violated and are in violation of the Clean Water Act, 33 U.S.C. §§ 1311 and 1319(d);

B.      Enter an enforcement order or an injunction under the Clean Water Act enjoining Defendants Calhoun and Moss Land Company from continuing to violate the Clean Water Act, and ordering Defendants Calhoun and Moss Land Company to cease and abate the discharge of PFAS from Sludge Field 11 and the Conveyances to the Coosawattee River without an NPDES Permit, including full remediation and elimination of the PFAS-contaminated sludge disposed of on Sludge Field 11;

C.      Enter a declaratory judgment that Defendant Calhoun has violated and is in violation of the terms and conditions imposed by its NPDES Permit and has violated and is in violation of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342;

D.      Enter an enforcement order or an injunction under the Clean Water

Act enjoining Defendant Calhoun from continuing to violate the terms and

conditions imposed by its NPDES Permit.

E.      Enter a declaratory judgment that the disposal of PFAS-contaminated

sludge by Defendants Calhoun and Moss Land Company may present an imminent

and substantial endangerment to health or the environment, pursuant to RCRA, 42

U.S.C. § 6972(a)(1)(B).

F.      Enter an enforcement order or an injunction under RCRA ordering

Defendant Calhoun to cease disposing of PFAS-contaminated sludge through land

application, enjoining Calhoun from its continuing violations of RCRA arising

from the ongoing entry and release to the environment of PFAS from PFAS-

contaminated sludge previously land applied on properties along and near the

Coosawattee River, Brittany Drive Wells #3 and #4, the historic Big Spring, and

all approved sludge fields, and requiring Defendants to remove and remediate

PFAS contamination from the Coosawattee, Oostanaula, and Coosa River

watersheds so as to cease the endangerment.

G.      Enter an enforcement order or an injunction under RCRA ordering

Defendant Calhoun to cease and remedy its imminent and substantial

endangerment to health and the environment caused by Calhoun's ongoing entry and release to the environment of PFAS from previously disposed PFAS-contaminated sludge at approved sludge fields by, among other things, identifying homes within the Brittany Drive and Mauldin Road Water Treatment Plant service areas that are currently not connected to the City of Calhoun's municipal water supply and to provide connections to the Calhoun's municipal water supply free of charge.

H.     Enter an enforcement order or an injunction under RCRA ordering Defendant Calhoun to take both temporary and permanent measures to upgrade its drinking water treatment processes and technology at both the Brittany Drive and the Mauldin Road Water Treatment Plants to effectively reduce and remove PFAS contamination from drinking water supplied to the region.

I.     Order Defendants to pay civil penalties in an amount not to exceed $66,712 per day per violation for all violations of the Clean Water Act. 33 U.S.C. §§ 1319(d), 1365(a); 40 C.F.R. §§ 19.1 – 19.4; 40 C.F.R. § 122.

J.     Award Coosa River Basin Initiative its reasonable fees, costs, and expenses, including attorneys' fees and expert fees, associated with this litigation

pursuant to Section 505(d) of the CWA, 33 U.S.C. § 1365(d) and Section 7002(e) of RCRA, 42 U.S.C. § 6972(e); and

K.    Grant Coosa River Basin Initiative any such further and additional relief as the Court may deem just and proper.

Respectfully submitted this 7th day of March, 2024.

> **SOUTHERN ENVIRONMENTAL LAW CENTER**
>
> */s/ Christopher J. Bowers*
> Christopher J. Bowers
> Georgia Bar No. 071507
> R. Hutton Brown
> Georgia Bar No. 089280
> 10 10th Street NW, Suite 1050
> Atlanta, GA 30308
> Telephone: 404-521-9900
> Fax: 404-521-9909
> cbowers@selcga.org
> hbrown@selcga.org
>
> James S. Whitlock
> North Carolina Bar No. 34304
> *Pro hac vice application forthcoming*
> 48 Patton Avenue, Suite 304
> Asheville, NC 28801
> Telephone:  828-258-2023
> Fax: 828-258-2024
> jwhitlock@selcnc.org

*Attorneys for Plaintiff Coosa River Basin Initiative*